**CLEVELAND WRECKING COMPANY, Plaintiff,**

v.

**IRON WORKERS LOCAL UNION 40, John Kelly, in his representative capacity as President of Iron Workers Local Union 40, and Iron Workers Locals 40, 361 & 417 of The International Association of Bridge, Structural and Ornamental Iron Workers Union Security Funds, Defendants.**

**No. 94 Civ. 3968 (JES).**

United States District Court, S.D. New York.

Dec. 6, 1996.

Morgan, Lewis & Bockius, L.L.P., New York City, for Plaintiff, Andrew J. Schaffran, of Counsel.

Mysak, Gorlick, Kravitz & Listhaus, P.C., New York City, for Plaintiff, Andrew A. Gorlick, Michael J. Vollbrecht, of Counsel.

Colleran, O'Hara & Mills, Garden City, New York, for Defendants, Edward J. Groarke, of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2201 and section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, plaintiff Cleveland Wrecking Company ("Cleveland") brings the instant action seeking a stay of arbitration and declaratory judgment on the merits. Defendants Iron Workers Local Union 40, John Kelly in his representative capacity as President of Iron Workers Local Union 40, and Iron Workers Locals 40, 361, and 417 of the International Association of Bridge, Structural and Ornamental Iron Workers Union Security Funds (collectively the "Union") counter-claim to compel arbitration. For the reasons set forth below, the Court compels arbitration.

## BACKGROUND

In or about 1981, plaintiff Cleveland entered into a collective bargaining agreement with the Union for the period July 1, 1981 through June 30, 1984 (the "CBA"). Affidavit of Andrew A. Gorlick Sworn to November 30, 1994 ("Gorlick Aff.") ¶ 3; Affidavit of Shelly M. Lipsett Sworn to November 30, 1994 ("Lipsett Aff.") ¶ 4; Affidavit of Edward

Walsh Sworn to October 17, 1994 ("Walsh Aff.") ¶ 3. Pursuant to the CBA, Cleveland was required, *inter alia,* to employ members of the Union when performing work within the Union's trade and geographical jurisdiction. Lipsett Aff. ¶ 4. The geographical jurisdiction for Local 40 included Manhattan. CBA, attached to Walsh Aff. at Exh. C, at 6; Gorlick Aff. ¶ 24. The Union's trade jurisdiction included

> [a]ll work pertaining to the erection, alteration and demolition of structural steel, structural metals ... [and] [a]ll work on buildings, bridges and all other structures [involving the demolition of structural steel].

CBA, §§ 2.1–2.2.

Section 42 of the CBA, referred to as the "evergreen clause" provides that the agreement would remain in effect until June 30, 1984 and automatically renew from year to year. CBA, § 42. However, after June 30, 1984, either party could terminate the agreement by giving the other party written notice at least four months prior to the expiration of the contract year.[1] *Id.*

Pursuant to section 36(1) of the CBA, the parties also agreed that:

> [a]ny grievance, complaint, or dispute between the Union and the Employer arising out of this Agreement or as to the meaning, interpretation, application or alleged violation of any provision of this Agreement, except as provided in [§ 36(2) ] ... shall be submitted [to arbitration].

*Id.,* § 36(1)a–36(1)b.

Section 36(2) of the CBA provides that:

The foregoing provisions for arbitration are not intended and shall not be construed as in anywise qualifying or making subject to change any provisions of this Agreement, including, but not limited to the handling of negotiations for a new Agreement, change in wage scale or jurisdictional disputes.

*Id.,* § 36(2).

By letter dated February 28, 1991, more than four months prior to the end of the contract year on June 30, 1991, Cleveland mailed the Union written notice of termination. Gorlick Aff. ¶ 4; Lipsett Aff. ¶ 6, Exh. B. The letter provided that "with the expiration of the existing agreement our contract is to be considered expired and no longer binding." Walsh Aff., Ex. G. Apparently, the Union never received the letter.[2] Answer and Counterclaim ("Ans. & Countcl.") ¶ 27. Since on or before February 28, 1991, Cleveland has not employed Union iron workers. Lipsett Aff. ¶ 8.

On June 1, 1993, Cleveland entered into a collective bargaining agreement with another union, Mason Tenders District Council of Greater New York ("Mason Tenders"), effective that day. Gorlick Aff. ¶ 22; Lipsett Aff. ¶ 9, Exh. C. Pursuant to that contract, Cleveland agreed to use Mason Tenders exclusively to perform, *inter alia,* the demolition and removal of structural steel. Lipsett Aff. ¶ 10, Exh. C at ¶ 2. Thereafter Cleveland hired Mason Tenders to commence work at the Consolidated Edison Kips Bay Project in Manhattan (the "Job Site") on January 4, 1994. Gorlick Aff. ¶ 23; Lipsett Aff. ¶ 11, 13. In particular, the work assigned to Mason Tenders involved the demolition of structural steel. Lipsett Aff. ¶ 13; Walsh Aff. ¶ 6. While the work at the Job

---

1. Specifically, section 42 provides:
   The Agreement shall remain in full force and effect until midnight of June 30, 1984; and, unless written notice be given by either party to the other at least four (4) months prior to such date of a desire for change therein or to terminate the same, it shall continue in effect for an additional year thereafter. In the same manner, this Agreement, with any amendments thereof, shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing given by either party to the other at least four (4) months prior the expiration of such contract year.

*Id.,* § 42.

2. The Union disputes whether Cleveland ever sent the alleged notice of termination on the grounds that a search of the Union's files did not produce the original letter, Gorlick Aff. ¶ 14, and that no Union official can recall having seen the original letter. Walsh Aff. ¶ 5. In response, Cleveland has come forward with sworn testimony of the Cleveland employees who recall dictating, typing, signing, posting, and mailing the letter of termination in accordance with normal office procedures. *See* Gorlick Aff. ¶¶ 5–14, Exhs. A at 11–13, B at 9–12, 15–28.

Site was in progress, representatives of the Union requested that Cleveland assign Union members to the removal of structural steel on that project pursuant to the CBA. Lipsett Aff. ¶ 15. Cleveland refused to grant the Union's request on the ground that it had properly terminated the CBA. *Id.*

In or about May 1994, the Union sought mediation with Mason Tenders pursuant to the New York Plan for the Settlement of Jurisdictional Disputes (the "New York Plan"). Walsh Aff. ¶ 14, Exh. L. Both unions were signatories of the New York Plan which provided for mediation of inter-union disputes. *Id.* Cleveland was not a party to, and did not participate in, the mediation. Walsh Aff. ¶ 15. On May 11, 1994, the mediator issued a ruling in favor of the Union, ordering Mason Tenders members to leave the Job Site. *Id.* ¶¶ 14–16, Exh. M. However, Mason Tenders never complied with the mediator's ruling and continued to staff the Consolidated Edison Kips Bay Project with its members until the project was completed. *Id.* ¶ 14.

By letter dated May 9, 1994, the Union notified Cleveland of the instant demand for arbitration in which the Union claims Cleveland violated the CBA by staffing the Job Site with Mason Tenders' workers. Lipsett Aff. ¶ 16. The Union seeks monetary damages for Cleveland's failure to employ members of the Union at the Job Site. Lipsett Aff. ¶ 17.

On May 26, 1994, Cleveland filed the instant action to stay arbitration on the ground that the issues of 1) whether an agreement to arbitrate still exists and 2) whether the Union's claim for monetary damages involves a "jurisdictional dispute" are not arbitrable. Complaint at 8–9. In addition, Cleveland seeks declaratory judgment that the CBA has been terminated, or in the alternative, that the Union's claims constitute jurisdictional disputes which are not arbitrable under the terms of the CBA. *Id.* The Union counterclaims to compel arbitration on the ground that, *inter alia*, both issues require interpretation of the terms of the CBA, a task which the parties explicitly agreed to delegate to the arbitrator. *See* Ans. & Countcl. at 7. Cleveland moves, and the

Union cross-moves for the relief sought in the pleadings. For the reasons that follow, the Court compels arbitration of both issues.

## DISCUSSION

██ In determining whether a dispute is arbitrable, the Court must attempt to implement the intent of the parties by looking first to the terms of the arbitration clause in the contract. *See Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 886 (2d Cir. 1982) (citing *McAllister Brothers, Inc. v. A & S Transportation Co.,* 621 F.2d 519, 521–23 (2d Cir.1980); *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80,* 605 F.2d 1290, 1294–97 (2d Cir.1979)). If the arbitration clause is broad, the Court "must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary." *Ottley,* 688 F.2d at 886 (citing *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960)). As the Supreme Court has noted, the strong federal presumption in favor of arbitrability applies with greater force when an arbitration clause is broad. *See AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). These principles apply where, as here, one of the key issues in dispute is whether the CBA has been terminated. *See Ottley,* 688 F.2d at 886; *McAllister,* 621 F.2d at 521–23; *Rochdale Village,* 605 F.2d at 1294–97; *United Steelworkers v. American Smelting and Refining Co.,* 648 F.2d 863, 866–67 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

██ Here, the parties entered into a broad, but not unlimited arbitration clause. Section 36 provides that

*any grievance, complaint, or dispute* between the Union and the Employer arising out of this agreement or *as to the meaning, interpretation, application,* or alleged violation of *any provision* or provisions of

this Agreement, except as provided in [§ 36(2) ] shall be sent to arbitration.

CBA, § 36 (emphasis added).

■ Thus, the arbitration clause encompasses "any" dispute "as to the meaning, interpretation [or] application" of "any provision" of the CBA. *See, e.g., McDonnell Douglas Finance Corporation v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832 (2d Cir.1988); *Rochdale Village,* 605 F.2d at 1295. Since words of limitation do not ordinarily render a broad arbitration clause narrow, *see Rochdale Village,* 605 F.2d at 1296, the fact that section 36(2) excludes negotiations for a new agreement, changes in the wage scale, and jurisdictional disputes from arbitration does not transform that section into a narrow clause.[3]

■ Where, as here, a broad arbitration clause is involved, the issue of contract termination must be arbitrated if there is "at least . . . a colorable claim under the contract that the contract has not been terminated." *Ottley,* 688 F.2d at 886; *see also Rochdale Village,* 605 F.2d 1290, 1295 (2d Cir.1979) ("[I]f the arbitration clause covers disputes as to contract interpretation, and the termination is alleged to have occurred on a basis 'implicit in (the) contract,' the termination question is arbitrable.") (citations omitted).

Whether a notice of termination which was mailed but not received satisfies the contractual requirement that notice be "given" to the other party is an issue which colorably requires interpretation of the terms of section 42 of the CBA, a task which the parties explicitly designated to the arbitrator in section 36. *See Corallo v. Merrick Central,* 733 F.2d 248, 252–53 (2d Cir.1984); *Ottley,* 688 F.2d at 886; *Rochdale Village,* 605 F.2d at 1295. It follows that the question as to whether the February 28, 1991 letter constituted compliance with the evergreen clause "arises out of" the CBA and is therefore arbitrable. *See Corallo,* 733 F.2d at 252;

*Ottley,* 688 F.2d at 886; *Rochdale Village,* 605 F.2d at 1295.[4]

■ The same analysis applies to the question of whether the instant claim falls under section 36(2) relating to jurisdictional disputes. If the Union colorably claims that the instant dispute does not constitute a "jurisdictional dispute" within the meaning of the CBA, then the issue is likewise arbitrable. *See Ottley,* 688 F.2d at 886.

Although section 36(2) expressly excludes "jurisdictional disputes" from arbitration, the CBA does not clearly define what is or is not a jurisdictional dispute. Jurisdictional disputes have been defined by case law as a controversy over whether certain work should be performed by one union or another, in which a party seeks injunctive or equitable relief in the form of assignment and performance of the disputed work. *See, e.g., Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 263, 84 S.Ct. 401, 404, 11 L.Ed.2d 320 (1964). Moreover, the term has been defined by statute to involve equitable relief. Title 29 U.S.C. § 158(b)(4)(D) provides that a jurisdictional dispute occurs when a union takes certain actions which have as their object:

> forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another trade, craft, or class unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.

Title 29 U.S.C. § 158(b)(4)(D).

The Union has already arbitrated the jurisdictional dispute against Mason Tenders and won judgment entitling it to the full equitable relief sought. Therefore, the Union now seeks only monetary damages in the form of wages, union dues, and benefits that their members would have received if the

---

3. A narrow arbitration clause by its terms covers only certain types of disputes. *See, e.g., New York News, Inc. v. Newspaper Guild of New York,* 927 F.2d 82, 83 (2d Cir.1991) (arbitration clause covering grievances "arising from the interpretation or enforcement" of CBA is narrow).

4. It is therefore for the arbitrator to resolve the Union's contention that Cleveland never sent the termination notice.

750

work had been awarded to them.[5] Since jurisdictional disputes normally involve actions for equitable relief, it is at least arguable that the Union's claim for monetary damages does not fall within the meaning of the term "jurisdictional dispute."

While it is true that Cleveland may also colorably argue that because the CBA does not incorporate the statutory definition by reference, it should not necessarily be dispositive of whether Cleveland's claim constitutes a "jurisdictional dispute." However, that circumstance seems to reinforce the conclusion that there is an issue of contractual interpretation that must be resolved by the arbitrator. The same is true with respect to Cleveland's claim that the dispute must be regarded as "jurisdictional" because the Union is really masking a jurisdictional dispute under the guise of a damages claim since it has already obtained all of the equitable relief to which it is entitled. This too requires a determination by the arbitrator as to whether that fact supports the conclusion that what is at issue is a jurisdictional dispute.[6]

## CONCLUSION

For the reasons stated above, plaintiff's motion to stay arbitration shall be and hereby is denied, and defendants' cross-motion to compel arbitration shall be and hereby is granted. The Clerk of the Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**

---

5. In the demand for arbitration, plaintiffs state that they "do[] not intend to seek in this arbitration any directive by the arbitrator that any work be performed by any other trade be assigned to members of Local 40. The award sought in this arbitration is for money damages only." Walsh Aff., Exh. H. at 2.

6. In light of the above, the Court need not consider defendants' alternative arguments that 1) a

"Short Form Trust Indenture" executed by the parties in 1977 requires arbitration of the instant claim, 2) Cleveland is bound by the dispute resolution mechanism of the National Maintenance Agreement entered into between the parties, or 3) the termination notice, if effective, does not terminate the contract until June 30, 1993, or does not bind all of the defendants.