**Angel C. VERA, individually for himself and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**SAKS & COMPANY, doing business as Saks Fifth Avenue, under the firm name and style Saks Fifth Avenue, Defendant–Appellee.**

**Docket No. 02–9141.**

United States Court of Appeals, Second Circuit.

Argued: June 20, 2003.

Decided: July 10, 2003.

---

laboratory tests revealed the presence of phys- ical abnormalities.

Vernon J. Welsh, Woodside, New York, NY, for Plaintiff–Appellant Angel C. Vera.

Richard Granofsky (Lawrence A. Steckman, of counsel), Lester Schwab Katz & Dwyer, LLP, New York, New York, for Defendant–Appellee Saks & Company.

Before: WALKER, Chief Judge, LEVAL and KATZMANN, Circuit Judges.

PER CURIAM.

Plaintiff appeals from the judgment entered by the United States District Court for the Southern District of New York (Koeltl, *J.*). The District Court denied plaintiff's motion to remand the case to state court, granted defendant's motion for summary judgment dismissing plaintiff's claims for failure to exhaust grievance and arbitration procedures under a collective bargaining agreement, and denied plaintiff's motion for summary judgment on his state law claim. For the reasons that follow, we affirm the judgment of the District Court.

## I. Facts and Procedural Background

Defendant Saks & Company ("Saks") operates a retail store commonly known as Saks Fifth Avenue. Plaintiff had been employed at a Saks store as a shoe salesperson whose salary was based at least in part on commissions earned on the sale of shoes. As a member of United Storeworkers, Local 2567, RWDSU, AFL–CIO ("the union"), plaintiff was subject to the terms of a collective bargaining agreement ("CBA") between Saks and the union. Paragraph 7 of the CBA detailed how plaintiff's compensation would be calculated, including tiered commission percentages tied to aggregate sales. Paragraph 7 of the CBA also included procedures for charging shoe returns against a salesperson's commissions. In addition, paragraph 23 required that "[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle, shall be submitted to arbitration" ("the arbitration clause"). Further, it provided that "[i]n any arbitration, the arbitrator shall be bound by the terms of this agreement and shall have no authority to add to, subtract from, change or modify any provision of the agreement" ("the 'no-change-or-modification' or 'no-change' clause").

When customers return shoes to Saks without a receipt, Saks is unable to identify the Saks salesperson who had originally sold the shoes and thus earned a commission based on the sale. To account for these so-called "unidentified returns," the union and employer negotiated paragraph 7(F) of the CBA, which provides:

*Unidentified Returns.* Effective June 1, 1998, on a monthly basis, all unidentified returns to the New York Store will be charged back against commissions by deducting from sales volume for each salespersons [sic] a prorated figure calculated by dividing the total of said returns among the employees based on each employee's percentage of net sales for that month.

Plaintiff filed this purported class action in New York State Supreme Court, New York County, in June 2000, alleging that the unidentified returns policy as set forth in the CBA and defendant's actions in compliance with this policy violate New York Labor Law section 193 and the common law. Section 193 provides, in pertinent part, that:

1. No employer shall make any deduction from the wages of an employee, except deductions which:

a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or

b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States

bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

N.Y. Lab. Law § 193 (McKinney 2002). Plaintiff alleged that defendant's practices consistent with the unidentified returns policy constituted impermissible wage deductions in violation of section 193 because section 193 prohibits deductions from wages for nonspecified items; unidentified returns deductions are not among the itemized deductions in section 193; and yet defendant reduced plaintiff's gross sales according to the unidentified returns policy. Plaintiff sought the amount of the commission reductions for unidentified returns, exemplary damages, an injunction prohibiting defendant from making further deductions for unidentified returns, and attorney's fees.

Defendant timely removed plaintiff's action to federal court pursuant to 28 U.S.C. § 1441, arguing that the District Court had original jurisdiction over the case based on section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2000), which preempted plaintiff's state claims. The District Court denied plaintiff's motion to remand the action to state court for lack of subject matter jurisdiction. It found, *inter alia*, that plaintiff's section 193 claim necessarily involved interpretation of the CBA and therefore was preempted by section 301.

The parties both moved for summary judgment. The District Court granted defendant's motion, finding that because plaintiff's claims were arbitrable, his fail-

ure to exhaust grievance and arbitration procedures required dismissal of his claims. *See Vera v. Saks & Co.*, 218 F.Supp.2d 490, 494 (S.D.N.Y.2002). It then denied plaintiff's cross-motion for summary judgment, given its holding that plaintiff's claims first had to be raised in accordance with the grievance and arbitration provisions of the CBA. *Id.* at 495.

This appeal followed.

## II. Analysis

### A. Motion to Remand

■ A district court must remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (2000). We review *de novo* a decision denying a motion to remand an action to state court on the basis of preemption. *See Foy v. Pratt & Whitney Group*, 127 F.3d 229, 232 (2d Cir. 1997).

■ A defendant may remove an action originally filed in state court to federal court if the case originally could have been filed in federal court. *See* 28 U.S.C. § 1441(a) (2000). Absent diversity of citizenship, a case may be filed in federal court in the first instance "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Pursuant to this rule, commonly referred to as the well-pleaded complaint rule, removal generally is not permitted simply because a defendant intends to defend the case on the basis of federal preemption. *See Foy*, 127 F.3d at 232. However, the "complete pre-emption corollary to the well-pleaded complaint rule," which applies to claims brought under section 301 of the LMRA, provides "that any claim based on preempted state law is considered a feder-

al claim arising under federal law." *Id.* (internal quotations omitted). The "unusual pre-emptive power" accorded section 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim. *Livadas v. Bradshaw,* 512 U.S. 107, 122 n. 16, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

Thus, even though the parties agree that plaintiff's well-pleaded complaint alleges on its face only state claims, and no one argues that diversity of citizenship exists between the parties, if plaintiff's state "claims are preempted by section 301, federal jurisdiction exists and the removal of his case was proper." *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38 (2d Cir.1997). The central question we must resolve, therefore, is whether section 301 preempts plaintiff's state claims.

■ Section 301 provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has interpreted section "301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Thus, when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301 and must instead be resolved by reference to federal law. *Id.* at 210, 105 S.Ct. 1904.

Further, and more pertinent to this case, the Supreme Court has extended the preemptive effect of section 301 beyond suits alleging contract violations:

[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 211, 105 S.Ct. 1904. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. 1904 (internal citation omitted).

Federal law preempts such state claims to further the federal goal of developing a uniform federal common law to govern labor disputes, "lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions." *Livadas,* 512 U.S. at 122, 114 S.Ct. 2068. Not every suit concerning employment or tangentially involving a CBA, however, is preempted by section 301. *See Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. 1904.

[T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow *from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.*

*Livadas,* 512 U.S. at 122–23, 114 S.Ct. 2068 (internal citations and quotation marks omitted).

For example, if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301. *Allis–Chalmers,* 471 U.S. at 212, 105 S.Ct. 1904. Nor would a state claim be preempted if its application required mere referral to the CBA for "information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

■ Plaintiff asserts that section 193 creates state rights that are independent of the CBA, that is, that he can establish defendant's liability under section 193 without any analysis of the terms of the CBA. Although the court may need to refer to the collective bargaining agreement to establish the amount of his damages, plaintiff asserts that such reference would not amount to interpretation of the CBA. To support his argument, plaintiff recites the common law default rule that commissions are earned at the time of sale,

apparently reasoning that under state law, because commissioned salespeople earn commissions at the time of the sale, any action taken after the time of the sale that reduces one's commission is a deduction from wages within the meaning of section 193. Although plaintiff acknowledges that parties may contract to alter this default rule, he contends that there is no need to interpret the CBA to see if Saks and the union here agreed to alter the rule because the CBA is silent on this issue.

Although "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," *Wynn v. AC Rochester,* 273 F.3d 153, 158 (2d Cir.2001) (per curiam), we find that this case requires interpretation of the CBA. For example, we must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned. *See, e.g., Sommer v. Ermold Co.,* 275 A.D. 629, 92 N.Y.S.2d 326, 327–28 (App.Div.1949) (interpreting an employment agreement to determine whether the parties had agreed to alter the common law rule and finding that they had so agreed, even though the agreement was ambiguous).[1]

■ Moreover, plaintiff's complaint challenges the legality of a term of the

---

1. *Cf. Allis–Chalmers,* 471 U.S. at 215–16, 105 S.Ct. 1904 ("[T]he Wisconsin court's statement that the tort was independent from a contract claim apparently was intended to mean no more than that the implied duty to act in good faith is different from the explicit contractual duty to pay. Since the extent of either duty ultimately depends upon the terms of the agreement between the parties, both are tightly bound with questions of contract interpretation that must be left to federal law."); *Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 500–01 (7th Cir.1996) (finding a claim brought under the Indiana wage payment law preempted because resolution of the state claim required interpretation

of the CBA to determine the date on which the employer was required to pay the relevant wages; rejecting plaintiffs' argument that the court merely had to consult or refer to the CBA to determine the date on which wages were due, since the written CBA did not include a specific date; and ruling that it was a matter of federal contract interpretation whether there was an implied contract term in the CBA requiring payment on a specific date); *Nat'l Metalcrafters Div. of Keystone Consol. Indus. v. McNeil,* 784 F.2d 817, 824 (7th Cir.1986) ("[The defendant-company's] interpretation of the contract may have been correct, an issue we do not want to prejudge. But it was an interpretation. The company

CBA, namely, the unidentified returns provision. The complaint claims that this provision of the CBA "violate[s] section 193 of the Labor Law."[2] In our view, plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA. *Cf. Medrano v. Excel Corp.*, 985 F.2d 230, 234 (5th Cir.) (finding that where a plaintiff argued that a provision of a CBA itself violated a state law, the "claim, without a doubt, is substantially dependent upon the meaning of a term of the CBA and its applicability in this case" and "clearly requires construing the CBA"), *cert. denied*, 510 U.S. 822, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993).

In sum, because resolution of plaintiff's section 301 claim will require substantial analysis of the CBA, we conclude that section 301 preempts plaintiff's section 193 claim. Pursuant to the complete preemption doctrine, federal jurisdiction exists and removal of this case was proper. Thus, the District Court properly denied plaintiff's motion to remand this case to state court.

## B. Defendant's Motion for Summary Judgment

 Plaintiff maintains that his claim that defendant violated section 193 is not arbitrable and that therefore the District Court erred when it granted defendant's motion for summary judgment dismissing his claims for failure to exhaust grievance and arbitration procedures in the CBA. "We review the district court's legal conclusions *de novo* and its findings of fact for clear error." *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir.1998). We review *de novo* a district court's determination that a claim is arbitrable. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir.2002).

"The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063 (2d Cir.1993). However, "since arbitration is a matter of contract ... a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Transit Mix Concrete Corp. v. Local Union No. 282*, 809 F.2d 963, 967 (2d Cir.1987) (internal citations and quotation marks omitted).

 Whether a CBA creates a duty for the parties to arbitrate a particular

---

was not violating what any fool would know was an express obligation of the contract. It was exploiting a gap in the language of the contract. A court or arbitrator might fill the gap just as [the defendant-company] did, by interpreting the silence of the contract as pregnant in light of other provisions ...; but it can be made only in a proceeding under section 301. If there is an arguable contract dispute, and there is here, the power to resolve it is confined to such proceedings.").

**2.** Although plaintiff now tries to disavow or at least minimize this allegation, we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939); *see also Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 135 (3d Cir.) ("It is settled that generally the right of removal is decided by the pleadings, viewed as of the time when the petition for removal is filed.") (internal citation, alteration, and quotation marks omitted), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). *See generally Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). Because plaintiff's complaint, at the time defendant filed its removal notice, included the allegation that the CBA provision was illegal, we properly consider whether this claim requires interpretation of the CBA.

claim is an issue for judicial determination. *Id.* "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* at 967–68 (internal citations and quotation marks omitted). "The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Capital,* 307 F.3d at 28.

▇▇ When a CBA contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Transit Mix,* 809 F.2d at 968 (internal quotation marks and alterations omitted). Absent an "express provision excluding a particular grievance from arbitration," only the "most forceful evidence of a purpose to exclude the claim from arbitration" will satisfy a party's "substantial hurdle" to rebut this presumption of arbitrability. *Id.* at 969. When an arbitration clause is broad, "arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *ACE Capital,* 307 F.3d at 34 (internal citations and quotation marks omitted); *see also Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims·touch matters covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them." (internal citation and quotation marks omitted)).

▇▇ The language in the CBA, requiring arbitration of "[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle," constitutes a broad arbitration clause. *Cf. ACE Capital,* 307 F.3d at 26 (holding that a clause "requiring arbitration '[a]s a condition precedent to any right of action hereunder, [of] any dispute [that] shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved,' is a broad one"); *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998) (describing as the "prototypical broad arbitration provision" an arbitration clause requiring arbitration of "[a]ny dispute, controversy or claim arising under or in connection with this Agreement"). If this were the only language in the CBA with respect to arbitration, there would be no doubt that plaintiff's section 193 claim is arbitrable: There is a clear agreement between the parties to arbitrate matters arising out of or relating to the CBA, and plaintiff's claim that Sak's deductions for unidentified returns made pursuant to the CBA were illegal presents a dispute arising out of or at least relating to the CBA, particularly given our duty to resolve all doubts in favor of arbitration.

But as plaintiff argues, the CBA also contains the "no-change-or-modification" clause: "[i]n any arbitration, the arbitrator shall be bound by the terms of this agreement and shall have no authority to add to, subtract from, change or modify any provision of this agreement." Plaintiff asserts that for the arbitrator to consider his

claim, he or she would need to consult something other than the terms of the CBA (i.e., section 193), and that to find in his favor, he or she would need to "subtract" the unidentified returns provision from the CBA, in violation of the "no authority to subtract" portion of the "no-change" clause. Because the "no-change" clause precludes the arbitrator from finding in plaintiff's favor, plaintiff maintains that his claim is not arbitrable.

The District Court rejected plaintiff's argument, finding that the "no-change" clause merely prohibits the arbitrator from changing the terms of the CBA and does not exempt any category of dispute from arbitration. *See Vera*, 218 F.Supp.2d at 495. In support of this conclusion, it relied on our decision in *Cleveland Wrecking Co. v. Iron Workers Local 40*, 136 F.3d 884 (2d Cir.1997). *Cleveland Wrecking* involved a provision in a CBA stating that the arbitration provisions "are not intended and shall not be construed as in anywise qualifying or making subject to change any provisions of this Agreement including, but not limited to the handling of negotiations for a new Agreement, change in wage scale or jurisdictional disputes." *Id.* at 886. We held that this language "does not exempt anything from arbitration" but rather "simply cautions that the general arbitration provisions should not be interpreted to 'qualify[ ]' or 'change' any other aspect of the CBA" because "notwithstanding the informal, often freewheeling, nature of arbitration, arbitrators are not at liberty to depart from or to vary the terms of the agreement." *Id.* at 889.

Although the "no-change-or-modification" clause arguably is different from the clause in *Cleveland Wrecking*, we find it ambiguous. It is not clear whether the clause "exclud[es] Vera's] grievance from arbitration." *Transit Mix*, 809 F.2d at 969. Saks contends that the "no-change"

clause never was intended to limit the arbitrator's authority to find a provision of the CBA unlawful and grant relief accordingly, but was intended only to prevent an arbitrator from substituting extraneously derived values in place of lawful provisions of the CBA. Saks asserts that an arbitrator adjudicating Vera's claim and others like it "absolutely" would be empowered to make an award in the employee's favor upon finding illegality of a CBA provision. Our doubts are resolved by the binding undertaking of Saks's counsel that in no dispute in which an employee challenges the lawfulness of a provision of the CBA will Saks contend to the arbitrator that the "no-change" clause bars the arbitrator from finding the provision unlawful and accordingly granting relief to the employee.

Given the ambiguity of the clause in its relation to this issue, the presumption in favor of coverage, *see id.* at 968, and the *binding undertaking of Saks not to argue* in any case that the arbitrator lacks authority by reason of the "no-change-or-modification" clause to find a CBA provision illegal and award relief accordingly, we conclude that Vera's section 193 claim is arbitrable.

The parties do not seem to dispute that the CBA contains clear grievance and arbitration procedures, and that plaintiff failed to file a grievance or to seek arbitration of his claim concerning the illegality of the unidentified returns policy or defendant's behavior in conformity therewith. "Ordinarily . . ., an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Because plaintiff failed to exhaust his remedies under the CBA to grieve and arbitrate his section 193 claim, the District

Court properly granted defendant summary judgment. *See generally Allis–Chalmers*, 471 U.S. at 220–21, 105 S.Ct. 1904 ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance... This complaint should have been dismissed for failure to make use of the grievance procedure established in the collective bargaining agreement, or dismissed as pre-empted by § 301.") (internal citations omitted).[3]

## C. Plaintiff's Motion for Summary Judgment

Given our conclusion that the District Court properly granted defendant's motion for summary judgment with respect to plaintiff's section 193 claim, plaintiff's argument that the District Court erred in denying his motion for summary judgment with respect to this same claim is meritless.

## Conclusion

For the reasons stated above, we affirm the judgment of the District Court.

---

**3.** *See also Atchley,* 101 F.3d at 501–02 (affirming the dismissal of a state claim that was preempted by section 301 for failure to grieve the claim in accordance with the mandatory arbitration clause in the CBA); *Wheeler v. Graco Trucking Corp.,* 985 F.2d 108, 113 (3d Cir.1993) (explaining that although the plaintiff was entitled to assert his preempted state law claim under section 301(a) of the LMRA, "he was first required to attempt to make use of the exclusive grievance and arbitration procedures contained in the collective bargaining agreement").