**James I. WYNN, Jr., Plaintiff–Appellant,**

v.

**AC ROCHESTER, General Motors Corporation, Charles Volo, Personally and in his capacity as Personnel Manager, Defendants–Appellees.**

**Docket No. 99–9106.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 2001.

Decided Nov. 19, 2001.

James I. Wynn, pro se, Rochester, NY, for Plaintiff–Appellant.

James C. Holahan, Rochester, NY, for Defendant–Appellee.

Before: JACOBS and OAKES, Circuit Judges, and LYNCH, District Judge.*

PER CURIAM:

Appellant James I. Wynn brought this action for fraud in the courts of New York in 1993, alleging that Charles Volo, the personnel supervisor for hourly employees at AC Rochester, made certain false representations to Wynn concerning Wynn's right to unemployment benefits under a collective bargaining agreement ("CBA") between General Motors Corporation ("GM") and the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). Nearly two years later, appellees removed the case to the United States District Court for the Western District of New York. After years of further discovery and motion practice, the District Court granted summary judgment for defendants on August 26, 1999. Wynn appeals, challenging both the grant of summary judgment and the District Court's later order denying his motion for leave to amend because the amendments were futile.

Were the case properly before us, we would find no error in the District Court's rulings. Unfortunately, despite the long efforts of the litigants and the District Court in addressing the merits of this dis-

* The Honorable Gerard E. Lynch, United States District Judge for the Southern District of New York, sitting by designation.

pute, we are constrained to hold that the case was never properly within the jurisdiction of the federal courts. We therefore vacate the judgment of the District Court, and remand the case with instructions to remand the case in turn to the state courts.

## BACKGROUND

The facts, viewed in the light most favorable to Wynn, demonstrate that Wynn was laid off as a GM "light assembler" in 1986 and subsequently found other employment. In the interim, he attempted to access certain unemployment benefits to which he was entitled under the collective bargaining agreement between GM and the UAW. In response, Volo, on behalf of GM management, told Wynn (1) that Wynn was eligible only for a lump-sum separation payment, and not for supplemental unemployment benefits; and (2) that neither Wynn nor any other laid off employee would be recalled by AC Rochester. As a consequence, Wynn elected not to pursue the supplemental unemployment benefits, but instead to apply for the separation payment, which, by its terms, effectively terminated any possibility of future recall by AC Rochester. In fact, neither of Volo's alleged statements were true: Wynn was eligible for the supplemental employment benefits (receipt of which would not have precluded future recall), and many of Wynn's fellow employees ultimately were recalled.

Wynn brought an action for fraud in the New York State courts on June 4, 1993, against Volo, AC Rochester, and GM (collectively, "GM"). Nearly two years later, on March 31, 1995, GM removed the case to federal court, asserting that the removal was timely because it acted within 30 days after learning from interrogatory responses that plaintiff's "claims for fraud and misrepresentation, as well as his entitle-ment to supplemental unemployment benefits and recall rights, are supported by the supplemental agreement between General Motors Corporation and the UAW in effect in 1987." Notice of Removal, ¶ 6. The interrogatory response, it said, was "the document from which [defendants] first ascertained that plaintiff's action for fraud and misrepresentation had become removable." *Id.* ¶ 8. This attempt to meet the 30 day time limit for removal to federal court, 28 U.S.C. 1446(b), is, to say the least, highly questionable. Wynn's original complaint explicitly alleged that Volo had falsely represented that Wynn was not entitled to supplemental unemployment benefits (Complaint, ¶ 24), when in fact he was "entitled to supplemental unemployment benefits pursuant to an agreement between General Motors Corporation and UAW" (*Id.* ¶ 9). Wynn, however, who was then represented by counsel, failed to challenge either the timeliness of the notice or the substantive removability of the case.

After lengthy proceedings, GM moved for summary judgment on July 31, 1998. After the motion was fully submitted, the District Court apparently recognized for the first time that federal jurisdiction over the case could be questioned. Citing *Foy v. Pratt & Whitney Group*, 127 F.3d 229 (2d Cir.1997), the Court ordered the parties to show cause why the case should not be remanded to state court. Both parties opposed remand. GM responded by calling attention to Wynn's allegation that Volo had misrepresented Wynn's ineligibility for supplemental unemployment benefits. Carefully refraining from disputing Wynn's claim that he was in fact eligible, GM asserted that determining Wynn's claim would require interpretation of the CBA:

> [T]he 1984 Supplemental Unemployment Benefit Plan does not expressly prohibit or permit employees to pursue

outside employment while collecting SUB benefits.... The SUB plan, however, does address the subject of outside employment and provides that the amount of any SUB benefit paid to an eligible claimant is reduced by compensation received from another employer.... Although [GM] believes that these provisions of the SUB Plan create a compelling inference that employees are eligible to receive SUB benefits while working for other employers, that conclusion must necessarily be inferred from the SUB plan language.

Def.'s Resp. to Order to Show Cause at 6–7. Wynn, by then representing himself, filed a highly vituperative response asking why it took so long for the court to decide it might not have jurisdiction, and charging that the court's sudden concern for its jurisdiction was the product of racial or other prejudice against him. Letter from Wynn to Judge Larimer of 8/19/99.

The District Court proceeded to grant summary judgment. The court's opinion, which thoroughly addresses the merits of the case, contains only a single footnote reference to the jurisdictional issue. After noting that both parties urged the Court to retain jurisdiction, the opinion simply but equivocally states:

> Because plaintiff's claims involve—to some extent—an interpretation of the collective bargaining agreement covering plaintiff's employment, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts any state law claims on those issues and provides a basis for federal jurisdiction.

*Wynn v. AC Rochester*, No. 95–6155L, slip op. at 1 n. 1 (W.D.N.Y. August 26, 1999).

Wynn appealed to this Court.

### DISCUSSION

■ Wynn's appeal, taken on its own terms, would present no difficult issues.

Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).

■ As to the claimed misrepresentation about benefit eligibility, even if all the other elements were satisfied, the evidence in this record fails to create a genuine issue as to reasonable detrimental reliance. Wynn admits (1) that he could have "ask[ed] a union representative to get ... information for [him] or direct [him] in a path where [he could] get ... information," Wynn Dep. at 46; (2) that he had access to a union representative and to the collective bargaining agreement itself; and (3) that he was afforded over six months to investigate and reconsider his decision. On these facts, even if Volo intentionally misstated the facts regarding Wynn's eligibility for benefits, no reasonable jury could find that it was reasonable for a laid-off employee to rely on oral representations from management about the contents of a CBA, without referring to the agreement itself or consulting union representatives. *See Hyosung America, Inc. v. Sumagh Textile Co. Ltd.*, 137 F.3d 75, 78 (2d Cir. 1998) ("[W]here a plaintiff has the means of knowing, by the means of ordinary intelligence, the truth ... of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.") (internal quotations omitted); *see also Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir.1989).

As to the claimed misrepresentation concerning future return to work, Wynn offered only conclusory allegations that Volo knew at the time that employees would be recalled. The District Court found that there was "no direct or credible circumstantial evidence before the Court that [Volo] made false statements to plaintiff knowing that they were false or fraudulent." Slip op. at 9. Though Wynn earnestly believes that he was intentionally lied to, he has cited to no concrete evidence from which a reasonable factfinder could reach that conclusion.

 It would thus be easy to affirm the judgment of the District Court if the merits were properly before us. Federal courts, however, are courts of limited jurisdiction. Even where the parties are satisfied to present their disputes to the federal courts, the parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 251 F.3d 334 (2d Cir.2001) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir.2000); *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994)). After careful examination, we conclude that this case is not.

 Wynn's claims sound in state tort law, not in federal law, and no diversity of citizenship is alleged. The only basis for federal jurisdiction asserted by GM in removing the case, and the one relied on by the District Court, is § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides for federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." This statute provides an especially broad jurisdiction. Normally, a complaint pleading only a state cause of action may not be removed to federal court on the basis of a defense of preemption, but "the pre-emptive force of [§ 301] is so extraordinary" that any claim based on state law it preempts will be considered a federal claim removable to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (internal quotations omitted). Thus, where that "preemptive force" applies, "the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action." *Shafii v. British Airways, PLC*, 83 F.3d 566, 569 (2d Cir.1996) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253–263, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)).

 As this Court recognized in *Foy v. Pratt & Whitney*, however,

The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied. "[W]here the resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement, the claim is pre-empted." *Hawaiian Airlines*, 512 U.S. at 260–62, 114 S.Ct. 2239 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (emphasis added)); *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068,

129 L.Ed.2d 93 (1994) (citing *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877).

127 F.3d at 233. The boundary between claims requiring "interpretation" of a CBA and ones that merely require such an agreement to be "consulted" is elusive. ■■■ But wherever that line is to be drawn, *Foy* itself clearly compels the conclusion that this case is on the side that is not subject to federal jurisdiction. In *Foy,* as in this case, plaintiffs charged that management representatives had made actionable misrepresentations to them about their rights under a CBA in the context of a lay-off. *Id.* at 231–32. As in this case, defendants argued that the case came within federal jurisdiction, since determining the truth or falsity of the representations would require interpretation of the CBA. *Id.* at 233–34. This Court, however, rejected the argument. We noted that it was apparent on the face of the agreement that the benefit allegedly falsely promised by management was *not* called for by the CBA. Thus, the parties did not contest the meaning of the CBA; rather, the dispute about whether management had made false representations "is fact-bound, and will primarily concern what was or was not stated at the summer 1992 meeting . . . . Indeed, Pratt & Whitney's primary defense to plaintiffs' claim is that the alleged misrepresentation was simply never made." *Id.* at 234. We acknowledged that determining plaintiff's claim would require reference to the CBA, but found that such reference to the CBA was "not in itself 'interpretation' warranting preemption." *Id.*

Rejecting the proposition that "the existence of a CBA would require preemption in all cases involving representations made to employees," we observed that the Supreme Court had ruled that " § 301 preemption applies only when necessary 'to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.' " *Id.* (quoting *Livadas,* 512 U.S. at 122–23, 114 S.Ct. 2068).

In this case, as in *Foy,* that standard is not met. It is true here, as it was in *Foy,* that determining Wynn's claim requires consulting the CBA. But as GM's response to the District Court's order to show cause makes plain, there is no genuine issue between the parties concerning interpretation of the CBA. As GM candidly admitted, the conclusion that Wynn was in fact eligible for supplemental unemployment benefits is "compell[ed]" by the plain language of the relevant agreement. Def.'s Resp. to Order to Show Cause at 7. Thus, neither Wynn's claim nor GM's defense requires interpretation of the CBA. In *Foy,* simple reference to the face of the CBA determined that the agreement did *not* provide certain benefits; similarly simple reference here "compel[s]" the conclusion that the benefits *were* provided. But neither case requires interpretation of the CBA, and therefore, "the purposes behind § 301 will in no way be thwarted by allowing plaintiffs to go forward will their state law claims in state court." 127 F.3d at 234. Our conclusion in *Foy* is equally applicable here:

> In this case, what matters is not so much the accurate construing of the CBA, but plaintiffs' understanding of its provisions, and the basis of that understanding. Unlike *Allis–Chalmers [Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)], this case does not involve a tort premised on the viola-

tion of duties in the CBA. [*Id.*] at 215, 105 S.Ct. 1904. These plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it. Reference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA or whether the CBA has been breached. State law—not the CBA—is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation.

127 F.3d at 235 (most citations omitted).

Wynn's claim is not a disguised claim for breach of the CBA. The CBA offered him an election between two types of benefits; he selected one, and was provided the benefit he chose. His claim is not that GM did not provide what the CBA required, but that GM officials misled him into selecting one option by misrepresenting the availability of the other. At least on these facts, where the parties agree about what the CBA provided and that the alleged statements about the CBA's terms (if made) were false, the fraud claim requires no interpretation of the CBA, and is therefore not preempted by § 301.

## CONCLUSION

It is unfortunate, to say the least, that the parties have litigated this case for years only to learn that they are in the wrong forum. That result only emphasizes the need for parties and for district courts to take a hard look at jurisdictional issues early in the litigation. Hopefully, the discovery record compiled below and the District Court's careful summary judgment opinion will expedite the work of the state court. But regardless of the merits of the District Court's reasoning, its judgment cannot stand, since the Court lacked jurisdiction to enter it.

Accordingly, the judgment of the District Court is vacated, and the case is remanded, with instructions to remand in turn to the state courts.