Gail ZUCKERMAN, Plaintiff,

v.

**VOLUME SERVICES AMERICA, INC., and Local 37 of the Hotel Employees and Restaurant Employees International Union, Defendants.**

No. CV 03–1920.

United States District Court, E.D. New York.

Jan. 26, 2004.

The Jacob D. Fuchsberg Law Firm, By Alan L. Fuchsberg, New York City, for Plaintiff.

Orrick, Herrington & Sutcliffe LLP, By Michael Delikat, New York City, for Defendant Volume Services America.

Joseph E. Gulmi, Cutchogue, NY, for Defendant Local 37.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Gail Zuckerman ("Plaintiff") commenced this case alleging disability discrimination in violation of New York State law. Named as Defendants are Plaintiff's former employer, Volume Services America ("VSA") and the union that represented Plaintiff while she was employed by VSA, Local 37 of the Hotel Employees and Restaurant Employees Union, AFL–CIO ("Local 37" or the "Union").

Although the case was commenced in New York State Court, it was removed by Defendants on the ground that Plaintiff's claims are preempted by Section 301 of the Labor Relations Act of 1947, 29 U.S.C. § 185(a) ("Section 301"). VSA's preemp-

tion argument is premised on the notion that resolution of Plaintiff's claims are inextricably intertwined with, and require interpretation of, the parties' collective bargaining agreement. Local 37 joins the employer's position and also argues that the claim against the Union is, in reality, one for breach of the duty of fair representation—a claim that can be brought only pursuant to Section 301. Both Defendants seek dismissal on the ground that when properly construed as labor law claims, Plaintiff's claims are barred by the applicable six month statute of limitations.

Presently before the court are the summary judgment motions of both Defendants. For the reasons that follow, the motion of VSA is denied and the motion of the Union is granted.

## BACKGROUND

### I. *Background*

#### A. *The Parties and the Allegations of the Complaint*

Plaintiff was employed by VSA from 1986 through 1999, providing service to restaurant patrons of the New York State Racing Corporation at Saratoga, Aqueduct and Belmont Park. At all relevant times, Plaintiff was represented by the Union, pursuant to a collective bargaining agreement with VSA.

In 1997, Plaintiff suffered renal failure and underwent dialysis treatment three times per week. In October of 1998, Plaintiff had kidney and pancreas transplant surgery. She was cleared to return to work, with some restrictions, in January of 1999. Plaintiff alleges that during the period of her illness and after her surgery she was denied requested reasonable accommodations and, instead, received physically difficult and less financially lucrative assignments. Plaintiff further alleges that she was denied an altered and reduced work schedule that VSA routinely offered to other employees. These actions are alleged to have taken place through the actions of Plaintiff's supervisor, Manny Pena.

The failure to accommodate Plaintiff's disability is alleged to have resulted in a loss of seniority which resulted in a diminution in Plaintiff's income. Plaintiff further alleges that her working conditions were made so unbearable that she was forced to leave her job. Thus, she claims that a hostile environment resulted in a constructive discharge. The foregoing factual allegations are alleged in support of the claim against VSA for disability discrimination, retaliation, disparate treatment and hostile work environment.

Plaintiff's claim against Local 37 arises out of the Union's representation of Plaintiff with respect to the conditions of her employment. Specifically, Plaintiff alleges that the Union failed to represent her and breached its duty of fair representation in various respects. As set forth in Plaintiff's final amended complaint, the Union is alleged to have breached its duty to Plaintiff "by failing to bring [Plaintiff's] complaints and concerns to VSA's attention by filing a grievance on her behalf and referring the matter to arbitration." The Union is accused of failing to approach VSA on Plaintiff's behalf "with respect to the right not to be discriminated against because of a disability." The Union is further alleged to have "authorized and ratified" the unlawful conduct of her employer. The failure to properly represent Plaintiff is referred to in the amended complaint as a "breach of the duty of fair representation."

#### B. *Procedural Posture*

As noted above, Plaintiff commenced this action in New York State Court. Defendants argue that upon completion of

discovery it became clear that Plaintiff's claims were governed wholly by Section 301 and are preempted by that statute. Defendants therefore properly removed this action to this court. *See Avco Corp. v. Machinists,* 390 U.S. 557, 559–60, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (action preempted by Section 301 may be removed to federal court even where plaintiff's complaint does not include a federal cause of action); *see, e.g., Foy v. Pratt & Whitney Group,* 127 F.3d 229, 232–33 (2d Cir.1997); *Hernandez v. Conriv Realty Associates,* 116 F.3d 35, 38 (2d Cir.1997). Shortly thereafter, Defendants submitted their motions for summary judgment.

## II. *The Motions for Summary Judgment*

Both VSA and Local 37 argue that Plaintiff's claims are governed wholly by reference to the seniority provisions of the parties' collective bargaining agreement. Because a decision on Plaintiff's claims is argued to require the court to construe that agreement, her claims are argued to arise completely under federal labor law and are therefore preempted. The Union raises the additional preemption argument that Plaintiff's claims against Local 37 amount to nothing more than an alleged breach of the duty of fair representation. Both Defendants seek summary judgment and dismissal of Plaintiff's claims on the ground that Section 301 claims are subject to a six month statute of limitations—a time period that expired long before Plaintiff filed the present lawsuit. After outlining relevant legal principals, the court will turn to the merits of the motions.

## DISCUSSION

### I. *Standards For Summary Judgment*

A motion for summary judgement is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential elements of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

### II. *Preemption Arguments and Disposition of the Motions*

#### A. *State Law Claims That Require Interpretation of Collective Bargaining Agreements Are Preempted*

The Supreme Court of the United States has long held that Section 301 gives federal courts jurisdiction over controversies involving collective bargaining agreements. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The importance of uniformity in the interpretation of these labor agreements has led the Court to hold that such claims must be decided under a single body of federal law. Therefore, any attempt to adjudicate Section 301 claims according to state law is preempted. *Id.* at 455–56, 77 S.Ct. 912; *Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *see also Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82

S.Ct. 571, 7 L.Ed.2d 593 (1962) (holding that Section 301 claims may be adjudicated in state courts, but that those courts must apply federal common law). Thus, a "state rule that purports to define the meaning or scope of a term in a contract suit is . . . preempted by federal law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

In *Lucas Flour,* the Supreme Court held Plaintiff's claim to be preempted by Section 301. There, the issue was one of clear contractual interpretation—whether a union strike was prohibited by a collective bargaining agreement. Citing the need for a uniform interpretation of the terms of labor agreements, the Court reversed the decision of the Washington Supreme Court applying state law principals of contract interpretation.

In *Allis–Chalmers,* 471 U.S. 202, 105 S.Ct. 1904 (1985), the Court held that a state court action for bad faith handling of an insurance claim involved interpretation of the parties' collective bargaining agreement and was therefore preempted by federal labor law. *Allis–Chalmers,* 471 U.S. at 218, 105 S.Ct. 1904. Although the Court made clear that claims involving contract interpretation are preempted, the Court also stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted . . . ." *Id.* at 210, 105 S.Ct. 1904. The issue, as stated by the Court, is whether evaluation of the state law claim is "inextricably intertwined" with construction of the terms of the parties' labor agreement. *Id.* at 213, 105 S.Ct. 1904.

More recently, in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) and *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), the Court emphasized that the focus in a Section 301 preemption analysis is not the facts underlying a plaintiff's claim, but whether interpretation of a collective bargaining agreement is central to the dispute to be adjudicated.

In *Lingle,* the Court held that plaintiff's state law claim for retaliatory discharge did not require interpretation of a collective bargaining agreement and was therefore not preempted by Section 301. In so holding, the Supreme Court disagreed with lower court holdings that focused on the facts to be decided. Instead, the Court made clear that the presence of facts that overlap plaintiff's claim and collective bargaining claims does not require dismissal on preemption grounds. The Court made a distinction between claims that require analysis of the same facts and those that require contract interpretation. Because plaintiff's claims in *Lingle* raised purely factual questions of the employer's conduct and motivation, and not interpretation of the collective bargaining agreement, preemption was not required.

The *Lingle* Court held specifically and clearly that "even if dispute resolution pursuant to a collective-bargaining agreement, on one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Lingle,* 486 U.S. at 409–10, 108 S.Ct. 1877.

Moreover, as set forth in *Livadas,* "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas,* 512 U.S. at 124, 114 S.Ct. 2068. Thus, in *Livadas* the court held that the "simple need" to refer to the collective bargaining agreement to determine plaintiff's wages

did not require a holding of preemption. *Id.* at 125, 114 S.Ct. 2068.

Following Supreme Court precedent, the Second Circuit has recognized that the starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim. *Foy v. Pratt & Whitney Group,* 127 F.3d at 233. The court then considers whether adjudication of any element of that claim requires interpretation of the parties' collective bargaining agreement. *Id.* Where plaintiff's claim can be determined without construing the terms of the collective bargaining agreement, the claim may proceed in state court. The mere fact that a labor agreement must be consulted or referred to when deciding a claim does not necessarily lead to the conclusion that the claim is preempted. *Id.*

Application of these principals led to the conclusion that plaintiffs' claims of negligent misrepresentation in *Foy* were not preempted by Section 301. There, plaintiffs alleged that their employer made false representations regarding plaintiffs' employment following a reorganization and layoff. Stating that plaintiffs' employment rights were set forth exclusively in the collective bargaining agreement, defendants argued that a decision on the negligent misrepresentation claims would necessarily require the court to construe that agreement.

Rejecting defendants' argument, the Second Circuit noted that the misrepresentation claim was dependent upon the factual determinations of the employer's behavior and motivation, as well as plaintiffs' conduct and their understanding of offers allegedly made. *Foy,* 127 F.3d at 236. While the court recognized that "reference" to the collective bargaining agreement might be necessary, state law would play no part in determining the meaning of

that agreement. Thus, plaintiffs claims were not preempted. *Id.*

Similarly, in *Wynn v. AC Rochester,* 273 F.3d 153 (2d Cir.2001), the Second Circuit held Plaintiff's state law claims of fraud and misrepresentation were not preempted by Section 301. There, plaintiff claimed that his personnel supervisor made false representations regarding plaintiff's rights to elect benefits after a layoff. Despite the fact that the benefits at issue arose under the parties' collective bargaining agreement, the Second Circuit declined to hold that the claims were preempted by Section 301. As in *Foy,* the court recognized that resolution of plaintiff's case would require reference to the collective bargaining agreement. *Wynn,* 273 F.3d at 158. Such reference, however, as was not tantamount to interpretation of that agreement. *Id.* Since plaintiff's claims turned mainly on the behavior and motivation of the employer, and not on interpretation of the meaning of the parties' labor agreement, the court held plaintiff's claims were not preempted by Section 301. *Id.* at 158–59. *See also Hernandez v. Conriv Realty Associates,* 116 F.3d 35, 40 (2d Cir.1997) (plaintiff's claims for breach of contract and fraud held not to require interpretation of labor agreement and not preempted by Section 301).

On the other hand, the Second Circuit held in *Vera v. Saks & Co.,* 335 F.3d 109 (2d Cir.2003), that substantial interpretation of the parties' collective bargaining agreement required a holding of preemption. There, plaintiff alleged that the terms of a collective bargaining agreement governing the payment of commissions violated a section of the New York State Labor Law prohibiting the withholding of employee wages. While the court recognized that "mere reference" to a collective bargaining agreement does not require preemption, the Second Circuit held that

the extensive interpretation required to adjudicate Plaintiff's claim required dismissal of the state law cause of action.

As an example of the type of interpretation that the court would have been called upon to make, the Second Circuit in *Vera* noted that Plaintiff's claim would require the court to determine whether the collective bargaining agreement embodied the parties' intent to alter certain common law rules. *Vera,* 335 F.3d at 115. Because plaintiff's claim alleged the illegality of a particular provision of the collective bargaining agreement, there was little question but that the claim required "substantial" interpretation of that agreement. *Id.* at 115–16. The holding that substantial collective bargaining analysis was required led to dismissal of plaintiff's state law claim on the ground of preemption. *Id.* at 116.

Lower courts have applied the principles set forth by the Supreme Court and the Second Circuit with varying results. Preemption has been found, for example, where plaintiff's claim disputes the validity of a provision in a collective bargaining agreement. *See Gray v. Grove Manufacturing,* 971 F.Supp. 78, 84 (E.D.N.Y.1997). Cases refusing to hold state law claims preempted include those alleging claims of defamation, intentional infliction of emotional distress and tortious interference with contract, *see Shannon v. MTA Metro–North Railroad,* 952 F.Supp. 177, 180–81 (S.D.N.Y.1997), as well as claims of negligence and negligent supervision, *see Brown v. National Football League,* 219 F.Supp.2d 372, 389–90 (S.D.N.Y.2002).

B. *Plaintiff's Complaint Does Not Require Interpretation of the Collective Bargaining Agreement*

The court's preemption analysis begins with identification of the elements of Plaintiff's claims. *See Foy,* 127 F.3d at 233. The court then considers whether adjudication of those elements requires the substantial interpretation of the collective bargaining agreement that requires preemption. *Id.*

Plaintiff claims discrimination in violation of the New York State Human Rights Law and Section 8–107(1) of the Administrative Code of the City of New York. These sections prohibit employment discrimination on account of a disability. To prevail on her claims, Plaintiff must show that she suffers from a disability and that the disability caused the behavior for which she seeks to impose liability. *Timashpolsky v. State University of New York Health Science Center at Brooklyn,* 306 A.D.2d 271, 272, 761 N.Y.S.2d 94, 96 (2d Dep't 2003).

As to the first element of Plaintiff's claims, *i.e.,* whether she suffers from a disability as that term is defined under New York State law, that element will be decided on the basis of expert medical opinion, the consideration of which will require no reference to the parties' collective bargaining agreement. Nor does the second element of Plaintiff's claims, whether Plaintiff's disability caused the behavior of which she complains, require interpretation of the collective bargaining agreement. Instead, adjudication of this element requires consideration of the employer's motivation in making employment decisions with respect to the Plaintiff's working conditions. While trial of this matter may involve some testimony regarding the terms of the collective bargaining agreement, that agreement will likely be consulted only to determine Plaintiff's wages and her seniority status. Testimony on these issues will arise, for example, to determine any damages.

VSA makes much of the fact that Plaintiff's deposition testimony refers to her seniority status and the loss thereof due to

the actions of her employer. It appears, however, that such testimony was offered by Plaintiff to emphasize that one element of her damages, while still employed by VSA, was a loss in seniority. That testimony also made clear Plaintiff's position that she was not seeking to bypass the provisions in the collective bargaining agreement that might have given assignments to a more senior employee. Instead, Plaintiff argues that her claim is completely independent of the collective bargaining agreement because it is based upon the argument that VSA's actions were motivated by a desire to punish her because of her disability. Because this court can easily construe Plaintiff's case as turning on the motivations of VSA and not upon a substantial interpretation of the collective bargaining agreement, it concludes that Plaintiff's claim is not preempted by Section 301.

As stated by the Second Circuit "the boundary between claims requiring 'interpretation' of a collective bargaining agreement and ones that merely require such an agreement to be 'consulted' is elusive." *Vera*, 335 F.3d at 115 (citation omitted). In reaching the decision here, however, the court observes that this case is factually close to the Second Circuit's refusals to find preemption in *Foy* and *Wynn* and distinguishes Plaintiff's claim from the preempted claim in *Vera*.

Here, as in *Foy* and *Wynn*, while the collective bargaining agreement may be referenced, Plaintiff's claim turns on the motivation of her employer and not the interpretation of any provision in the collective bargaining agreement. *See Foy*, 127 F.3d at 233; *see also Wynn*, 273 F.3d at 158–59. In *Vera*, however, unlike here, plaintiff's claim alleged the illegality of a particular provision in the parties' collective bargaining agreement. Such a case is easily distinguishable from a claim alleg-

ing, *inter alia*, a loss in seniority as a result of defendant's discriminatory conduct. Indeed, were this court to conclude that Plaintiff's discrimination claim required a holding of preemption, it would effectively hold that every employment discrimination claim brought on behalf of a unionized employee is barred by preemption. The court does not read precedent to require such a result.

In view of the foregoing, the court denies the motions for summary judgment to the extent that they are based upon the ground that Plaintiff's claims require interpretation of the collective bargaining agreement. Although both Defendants have raised this ground, it is the sole argument raised by VSA. Accordingly, VSA's motion for summary judgment is denied. The court turns now to consider the additional preemption ground raised by the Union.

## C. *Preemption and the Union's Duty of Fair Representation*

■ A unions' duty to fairly represents its members arises from the union's status as the exclusive bargaining agent with the employer. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Rodolico v. Unisys Corp.* 96 F.Supp.2d 184, 187 (E.D.N.Y.2000). The duty of fair representation includes the "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177, 87 S.Ct. 903, quoting, *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). A breach of the duty of fair representation occurs when the union has acted in a manner that is arbitrary, discriminatory or in bad faith. *Vaca*, 386 U.S. at 190, 87 S.Ct. 903.

State law claims alleging conduct that is within the union's duty of fair representation are subsumed by this duty and are therefore preempted. *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 187–88 (E.D.N.Y. 2000). Put differently, where a state law claim gives no new rights to the employee and imposes no new duty on the union, it is preempted. *Id.* Thus, where a union is charged with discriminating against certain members on account of their age, that claim is construed as a claim for breach of the duty of fair representation and any claim under a state law anti-discrimination statute is preempted. *Rodolico*, 96 F.Supp.2d at 188–89; *accord Marrero v. City of New York*, 2003 WL 1621921 *3 (S.D.N.Y.2003) (New York State Human Rights Law claim that union discriminated against plaintiff on account of his race preempted as alleging a claim of breach of the duty of fair representation); *see also Smith v. Grobet File Co. of Am., Inc.*, 2003 WL 22047869 *7 (S.D.N.Y.2003) (civil conspiracy claim against union preempted as alleging breach of duty of fair representation).

### D. The Claim Against The Union Alleges Only A Breach of the Duty of Fair Representation

 The Union's motion alleges that Plaintiff's claim, however pleaded, amounts to a claim for breach of the duty of fair representation. This court agrees.

Plaintiff's complaint refers explicitly to the Union's alleged breach of its duty to fairly represent Plaintiff. As set forth above, Plaintiff alleges that the union discriminated against her on account of her disability. Such discrimination is alleged to have taken the form of failing to bring Plaintiff's complaint to the attention of her employer and failing to file a grievance on her behalf. Such allegations have been held consistently to allege a breach of the

duty of fair representation, and nothing more. *See, e.g., Marrero*, 2003 WL 1621921 *3 (claim of failure to properly represent plaintiff at grievance hearing on account of race held to allege breach of duty of fair representation); *Rodolico*, 96 F.Supp.2d at 188–89 (claim that union failed to represent members on account of their age held to allege breach of duty of fair representation).

It matters not that Plaintiff alleges that the Union is alleged to have failed Plaintiff on account of her alleged disability. As set forth in clear Supreme Court precedent, the duty of fair representation encompasses the duty to represent union members without discrimination. *See Vaca*, 386 U.S. at 177, 87 S.Ct. 903. Tacking an alleged disability on to what is essentially a breach of the duty of fair representation claim does not transform that claim into something more. In sum, because Plaintiff's claim against the Union, however factually based, is a claim for the breach of the duty of fair representation, that claim is "subsumed by the duty of fair representation" and is therefore preempted by federal law. *Marrero*, 2003 WL 1621921 *3.

A claim for breach of the duty of fair representation must be commenced within six months of the time when plaintiff "knows or should know" that the duty was breached. *Marrero*, 2003 WL 1621921 *3; *Snay v. Postal Service*, 31 F.Supp.2d 92, 96 (N.D.N.Y.1998). It is clear that this six month period expired long before the commencement of Plaintiff's action. The claim against the Union is therefore dismissed as untimely.

### CONCLUSION

For the reasons set forth above, the motion of Defendant Local 37 of the Hotel Employees and Restaurant Employees International Union for summary judgment

is granted and the claim against the Union is dismissed. ·The motion of Defendant Volume Services America is denied. Because Plaintiff's claim against this Defendant is not preempted, there is no federal jurisdiction in the matter. This case is therefore ordered remanded to the Supreme Court of the State of New York, County of Queens. *See Hernandez,* 116 F.3d at 39 (where plaintiff's claim is not preempted, federal jurisdiction does not exist); *Brown,* 219 F.Supp.2d at 386 (where preemption is not found, proper remedy is remand of plaintiff's state law claim to state court).

After remanding this case to the State Court, the Clerk of the Court is directed to terminate the motions and to close the file in this matter.

SO ORDERED.