**Augustine TUCKER, Plaintiff,**

v.

**AMERICAN BUILDING MAINTENANCE, et al., Defendants.**

**No. 06 Civ. 2595(VM).**

United States District Court, S.D. New York.

Aug. 31, 2006.

Harry Mark Weinberg, for American Bldg. Maintenance.

Arthur Viviani, New York, NY, for Collins Bldg. Services.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se plaintiff Augustine Tucker ("Tucker") brought this action against his former and current employers, defendants American Building Maintenance Company of New York, Inc. ("ABM") and Collins Building Services ("CBS") (collectively, "Defendants") by petition filed in the New York State Supreme Court, New York County, to vacate an arbitration award rendered pursuant to a collective bargaining agreement (the "Agreement") between Defendants and Tucker's union, Local 32BJ, Service Employees International Union (the "Union"). After removing the action to this Court, ABM moved for its dismissal pursuant to Fed.R.Civ.P. 12(b)(6). CBS joined in ABM's motion. For the reasons discussed below the motion is GRANTED.

### I. BACKGROUND

Tucker's petition (the "Petition") relates to a grievance he filed with the Union in November 2003 claiming that ABM, and later CBS as successor to ABM, improperly changed the hours of his work shift as a watchman, porter and utility worker at a commercial building located at 120 Wall Street, New York City. As a result of the change, Tucker lost the benefit of overtime pay associated with his former work shift and assignment. In accordance with the terms of its Agreement

with Defendants, the Union filed a grievance that was heard and decided by an arbitrator, John L. Anner (the "Arbitrator"). Following four hearings held in March, June and August 2005, and after reviewing post-hearing submissions from all the parties, the Arbitrator issued an Opinion and Award dated November 22, 2005 (the "Award") denying the Union's grievance and finding that under the terms of the Agreement Defendants were authorized in certain circumstances to alter Tucker's work shift and assignments. Tucker filed the instant Petition in state court on February 28, 2006. The action was properly removed to this Court by Defendants under 28 U.S.C. § 1441(b) because the Petition states a claim that gives rise to federal question jurisdiction under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[1]

The Petition alleges that the Award was arbitrary and capricious and permeated with fraud and inaccuracies, that it was the product of collusion between the Union and Defendants, and that it exceeded the Arbitrator's authority by modifying the Agreement. Tucker also complains that the Union attorney who represented his interests during the arbitration proceeding provided negligent and inadequate representation in several respects, and that Tucker was not allowed to submit evidence or provide testimony.

Defendants present three grounds in support of their motion to dismiss. First, they argue that Tucker has no standing to bring an action to vacate an arbitration award because he is not a party to the Agreement under which the arbitration was conducted. Second, Defendants contend that Tucker fails to allege facts sufficient to support a claim for breach of the Union's duty of fair representation or for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, or a claim to vacate an arbitrator's award under federal or state law. Finally, ABM asserts that Tucker's action is untimely under Section 12 of the Federal Arbitration Act, 9 U.S.C. § 12, in that the Petition

---

**1.** Because Tucker is appearing here pro se, an explanatory note about this procedure may be in order. Removal was made on the ground that Tucker's petition requires interpretation of a collective bargaining agreement and therefore a federal question is presented on the face of the petition; that the claim is preempted by Section 301(a) of the LMRA, 29 U.S.C. § 185(a); and that this court has original jurisdiction pursuant to the LMRA.

LMRA § 301(a) gives federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). This section preempts state law contract claims involving alleged breaches of collective bargaining agreements. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organiza-

tion.'"); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). This preemption also extends to any state law claim that substantially depends upon analysis of such an agreement. *See Wynn v. AC Rochester*, 273 F.3d 153, 157–58 (2d Cir.2001) ("'[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted.'") (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)); *see also Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir.2003) ("[B]ecause resolution of plaintiff's section 301 claim will require substantial analysis of the collective bargaining agreement, we conclude that section 301 preempts plaintiff's section 193 claim. Pursuant to the complete preemption doctrine, federal jurisdiction exists and removal of this case was proper."). Because Tucker's claims require interpretation of his collective bargaining agreement, removal was proper.

was filed in the state court more than three months after the Award was filed or delivered. Defendants point out that the Award was dated by the Arbitrator and deemed filed on November 22, 2005 and that a copy of it was stamped as received by the Union on November 28, 2005. Tucker counters that he actually received a copy of the Award on December 1, 2005 and was informed by letter from a Union attorney at some time after January 19, 2006 that the Union found no legal grounds to contest or vacate the Award in court.

## II. *DISCUSSION*

 Defendants correctly note that, as an exception to the general rule, an employee not party to a collective bargaining agreement may have standing to maintain an action to vacate an arbitration award issued pursuant to such an agreement in cases where the employee claims both breach of the labor agreement by the employer and breach of the duty of fair representation by the union. *See Chauffeurs, Teamsters & Helpers, Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (noting that whether an employee sues both the union and the employer or only one of those entities, "he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation") (*citing DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). This duty of fair representation encompasses the labor union's " 'statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " *United Steelworkers of Am., AFL–CIO–CLC v. Rawson,* 495 U.S. 362,

372, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (*quoting Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). As articulated by the Second Circuit, to establish a breach of the duty of fair representation, an employee must demonstrate that " '[t]he union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process.' " *Mack v. Otis Elevator Co.,* 326 F.3d 116, 129 (2d Cir.2003) (*quoting Barr v. United Parcel Serv.,* 868 F.2d 36, 43 (2d Cir. 1989)).

A fair and lenient reading of Tucker's Petition and his response to Defendants' motion, construed in the light most favorable to him and drawing reasonable inferences in his favor, fails to suggest, other than in sweeping and conclusory allegations, any facts that would support a finding of any conduct by the Union remotely approaching the onerous standards of irrationality, unlawfulness or deceit necessary to support a determination that the Union's actions here were arbitrary, discriminatory or taken in bad faith, or that such conduct seriously undermined the arbitral process. The grievance the Union prosecuted on Tucker's behalf entailed a matter of contract interpretation. Specifically, as articulated by the Arbitrator, the two questions the grievance presented were whether Tucker's removal by Defendants from his work shift and assignment without prior Union notification or consent was unilateral and thus impermissible under two particular provisions of the Agreement, and whether Tucker was entitled to overtime pay associated with his previous position. (*See* Opinion and Award of Contract Arbitrator John L. Anner, dated November 22, 2005, attached to Ex. A of Certification of Harry Weinberg in Support of Motion to Dismiss Pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, dated April 11, 2006, at 10.)

■ Tucker's only specific allegation of Union misconduct asserts that the Union's counsel was negligent in presenting an adequate defense by not seeking an adjournment to permit the testimony of a witness Tucker regarded as critical, proceeding with a hearing over Tucker's objection, and failing to obtain certain documentary evidence Tucker had listed. To this extent, Tucker charges that the Union attorney deliberately subverted the Union's case. However, the Supreme Court has declared that "mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." *United Steelworkers*, 495 U.S. at 372–73, 110 S.Ct. 1904. Moreover, to show that the Union's tactical decisions in failing to present witnesses, or that its alleged perfunctory or otherwise inadequate representation of an employee during a grievance arbitration proceeding, are enough to support a breach of a union's duty of fair representation, the evidence must sufficiently indicate that the union's actions "amounted to conduct and omissions 'so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" *Barr*, 868 F.2d at 43 (*quoting NLRB v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984)).

The particular deficiencies in the arbitration proceeding that Tucker points to in support of his claim fall far short of the requisite high bar. At best, insofar as he complains about counsel's failure to call a witness Tucker claims would have provided testimony favorable to his grievance, and about the failure to obtain the documents he refers to, Tucker's argument could be read as a challenge to the quality of the representation the union provided that consequently produced an evidentiary record before the Arbitrator insufficient to justify the outcome. But this theory would fail as proper ground to vacate the Award.

■■ First, failure of a union representative to offer particular evidence or advance arguments that the grievant asserts would support his claim not suffice to violate the duty of fair representation. *See Barr*, 868 F.2d at 42–43 (rejecting an employee's claim that the union's conduct at a proceeding held under a collective bargaining agreement constituted a breach of the duty of fair representation by not presenting evidence the employee claimed would have been strongly exculpatory); *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F.Supp. 1221, 1230 (E.D.N.Y.1990) (stating that a union's failure to consult an employee, to keep him informed of the status of the grievance, and to provide notice and opportunity to attend portions of a proceeding would not suffice to constitute breach of the duty of fair representation) (*citing Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976), and *Higdon v. United Steelworkers of Am.*, 706 F.2d 1561 (11th Cir.1983)). Second, even if the Court were convinced that other evidence proffered by Tucker would have favored his position in the arbitration proceeding, on a motion to set aside the Award the Court would be precluded from reviewing the adequacy of the factual record developed by the Arbitrator as basis for the Award, except to the extent such assessment may bear upon a determination as to whether the Award was the product of manifest disregard of the law. *See Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir.2004) ("A federal court may not conduct a reassessment of the evidentiary record ... upon the principle

that an arbitral award may be vacated when it 'runs contrary to "strong" evidence favoring the party bringing the motion to vacate' the award." (citation omitted)).

Nor is there anything in Tucker's Petition, other than conclusory statements, providing any details as to how the Award was arbitrary and capricious or exceeded the Arbitrator's power, or how it was fraudulent or the product of collusion between the Defendants and the Union, so as to satisfy the rigorous standards prescribed by Section 10(a) of the Federal Arbitration Act to set aside an arbitration award. As set forth in that statute, the narrow circumstances under which an arbitration award may be vacated are limited to cases:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

■■■ Reviewing these standards in *Wallace,* the Second Circuit declared that the statute imposes a heavy burden on a party seeking to vacate an arbitral award, and that all of the permissible grounds " 'involve corruption, fraud, or some other impropriety on the part of the arbitrators.' " 378 F.3d at 189 (*quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir.2003)). The *Wallace* court also instructed that a

federal court "cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached.' " *Id.* at 190 (*quoting Banco de Seguros del Estado v. Mutual Marine Office, Inc.,* 344 F.3d 255, 260 (2d Cir.2003) (emphasis in original)).

■■■ Moreover, even if a federal court is persuaded that an arbitrator has reached an incorrect legal result, it "should not conduct an independent review of the factual record presented to [the arbitrator] in order to achieve the 'correct' result," *id.* at 192, for the Second Circuit " 'does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award.' " *Id.* at 193 (*quoting Success Sys., Inc. v. Maddy Petroleum Equip., Inc.,* 316 F.Supp.2d 93, 94 (D.Conn.2004)); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 216 n. 10 (2d Cir.2002); *see also United Fed'n of Teachers, Local 2 v. Bd. of Educ.,* 1 N.Y.3d 72, 769 N.Y.S.2d 451, 801 N.E.2d 827, 832 (2003) (enunciating the standard applicable to a petition to vacate an arbitral award under New York law).

A review of the record of the arbitration proceeding and the content of the Award here indicates that the Arbitrator ruled after conducting extensive hearings on four occasions as well as receiving post-hearing briefs from both Defendants and the Union. The Award reflects a balanced presentation of the parties' respective positions and a reasoned interpretation of various provisions of the Agreement that were in dispute. The Union pointed to two clauses under which employers agreed to maintain employee work schedules and positions unchanged and not to alter job assignments without union consent. De-

fendants countered that under other provisions, employers retained an absolute right to transfer employee work assignments as long as the shift was not made in an effort to increase workloads or require more than a reasonable day's work. In particular, Defendants relied on a paragraph of the Agreement referred to as the "flexibility clause," which they argued permitted the employer, on three weeks' notice to the Union, to assign cleaning employees to any cleaning duty on office floors, provided the change did not substantially increase the employee's workload. The Union maintained that the flexibility clause did not apply to this case because Tucker was not an office cleaning employee, but a porter with special assignments. Both sides presented decisions of the Office of Contract Arbitrator in support of their respective positions.

Having so framed the contractual dispute, the Arbitrator ruled that Tucker worked as a porter, that his duties carried cleaning functions, and that the Agreement's flexibility clause therefore applied. On this basis and for other reasons he considered, the Arbitrator also rejected the Union's argument that Tucker was entitled to overtime pay.

 The Court finds nothing in the record to support Tucker's contention that, by not endorsing the contract interpretations the Union and Tucker had espoused, the Arbitrator "rewrote" the Agreement. On the Court's reading of the applicable provisions of the Agreement, the parties' respective arguments advancing their positions, and the legal analysis on which the Award is grounded, the Court is persuaded that the Award exhibits more than colorable justification for the Arbitrator's decision in that it falls well within the plain language of the Agreement and the bounds of reasonable application of principles of contract interpretation. Thus, the Arbi-

trator's construction of the Agreement cannot properly be characterized as arbitrary or otherwise demonstrating manifest disregard of the law. *See Wallace,* 378 F.3d at 189–90. Even if the Court disagreed with the Arbitrator's factual analysis and legal conclusions, and were convinced that some other reading of the facts or of the applicable provisions of the Agreement may be plausible, the Court could not permissibly substitute its own view for that of the Arbitrator as a basis to warrant vacating the Award. *See id.* at 189–90, 193; *Westerbeke,* 304 F.3d at 214, 216 n. 10 (noting that interpretation of contract terms is within the province of the arbitrator and not subject to judicial review, and that an arbitral award should be confirmed despite the court's serious reservations about the soundness of the arbitrator's reading of the contract at issue).

Because the Court finds that Tucker has not presented any grounds to support granting his Petition to vacate the Award, the Court does not address Defendants' argument regarding the timeliness of this action.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket Nos. 5 and 25) of defendants American Building Maintenance Company of New York, Inc. and Collins Building Services to dismiss the petition of plaintiff Augustine Tucker to vacate the arbitral award at issue herein is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**