Francisco ALCANTARA; Eddie Anderson; Oscar Diaz; Joseph Marin; Vincente Martinez; Francisco Morillo; Manuel Pizarro; Nelson R. Rodriguez; Luis Sanchez; Bernardo Segura; and Alipio Tiburcio, Plaintiffs,

v.

ALLIED PROPERTIES, LLC; Ocean View II Associates; Ocean View Realty Co.; Bridgeview II Co.; and T.U.C. Management Co., Inc, Defendants.

No. 04–CV–3313 (JBW).

United States District Court, E.D. New York.

Sept. 10, 2004.

**338**

Office of the General Counsel, Service Employees International Union, Local 32BJ, AFL-CIO, by Judith Padow, Katchen Locke, New York, NY, for Plaintiffs.

Nixon Peabody LLP, by Randy Gidseg, Jonathan W. Greenbaum, New York, NY, for Defendants.

## MEMORANDUM & ORDER

JACK B. WEINSTEIN, Senior District Judge.

## TABLE OF CONTENTS

I. Introduction .................................................338

II. Procedural History .........................................339

III. Facts Alleged ..............................................339

IV. Law .......................................................339
 A. New York Displaced Building Service Workers Protection Law ............339
 B. Federal Preemption as Basis for Removal ...............................340
 C. *Garmon* Preemption...................................................340
 D. *Machinists* Preemption ...............................................341
 E. Section 301 Preemption ...............................................343

V. Application of Law to Facts ...............................344
 A. *Garmon* Preemption...................................................344
 B. *Machinists* Preemption ...............................................344
 C. Section 301 Preemption ...............................................345

VI. The Problem of Sections 22–505(b)(8) and (d)...............345

VII. Conclusion.................................................347

### I. *Introduction*

In deciding this case, the court takes judicial notice of the widespread disturbances in New York City following the "9/11 attack" on the World Trade Center. *Cf.* Leslie Eaton, *In Nation's Courtrooms, Wounds from 9/11 Attacks Persist*, N.Y. TIMES, Sept. 9, 2004, at A1; Lydia Polgreen, *With [9/11] Funds Winding Down, Questions Remain About Longer–Term Needs*, N.Y. TIMES, Sept. 9, 2004, at B8. Dislocation of workers and businesses and the suffering caused by loss of jobs led to a workers' protection act in the exercise of the City's police powers. It was deemed

necessary to stabilize the City and enable it to begin its recovery. This suit raises an aspect of the effort by the City, its residents, businesses, workers and others to rebuild New York. Federal policy and statutes are not inconsistent with such local self-help.

Plaintiff-workers allege violations of the New York Displaced Building Service Workers Protection Act ("NYDWPA"). They seek restoration of their employment and back wages and benefits. *See* N.Y.C. Admin. Code § 22–505. The NYDWPA was designed to mitigate the harsh economic aftershocks of the devastating terrorist attack of September 11, 2001. *Id.* Historical Note (effective November 27, 2002). It requires, in part, certain purchasers of large buildings in New York City to retain the service employees of the selling party for at least a ninety-day transition period.

The case was commenced in a New York court. It was removed to federal court by defendants, building owners covered by the NYDWPA. Plaintiffs move to remand the case. Defendants argue that plaintiffs' state law claims are preempted by the National Labor Relations Act, 29 U.S.C. §§ 157 & 158 ("NLRA") and the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), and are, therefore, removable. The motion to remand is granted for the reasons stated below.

## II. *Procedural History*

Plaintiffs originally filed this action in the Supreme Court of the State of New York, County of Queens. On July 28, 2004, plaintiffs filed an order to show cause, requesting a temporary restraining order and preliminary injunction to restore their employment pursuant to section 22–505(c)(2) of the NYDWPA. On August 2, 2004, the date the order to show cause was to be heard in state court, defendants removed the case to federal court pursuant

to section 1331 of title 28 of the United States Code.

## III. *Facts Alleged*

Plaintiffs were regularly employed as building service workers in various residential buildings owned by defendants Oceanview II Associates, Bridgeview II Co. and Ocean View Realty Co. T.U.C. Management Co. managed the buildings. The workers were paid between $17.28 and $19.10 hourly. On July 14, 2004, defendant Allied Properties, LLC ("Allied Properties") purchased the residential buildings in which plaintiffs labored. On July 15 and 16, 2004, plaintiffs and their union, Service Employees International Union, Local 32BJ, AFL–CIO, requested that Allied Properties employ plaintiffs for a transition period as required by the NYDWPA. Allied Properties refused to retain plaintiffs. It hired new workers.

## IV. *Law*

### A. *New York Displaced Building Service Workers Protection Law*

Section 22–505 of the NYDWPA provides for notice of a demand to continue employment and the right to temporary continuance in the employment of a new building owner. It reads in part:

b. (1) No less than fifteen calendar days before terminating any building service contract, any covered employer shall request the terminated contractor to provide to the successor employer a full and accurate list containing the name, address, date of hire, and employment occupation classification of each building service employee currently employed at the site or sites covered by the terminated contract.

(2) No less than fifteen calendar days before transferring a controlling interest in any covered building in which

building services employees are employed, any covered employer shall provide to the successor employer a full and accurate list containing the name, address, date of hire, and employment occupation classification of each building service employee currently employed at the site or sites covered by the transfer of controlling interest.

(3) No more than seven calendar days after notice that its building service contract has been terminated, any covered employer shall provide to the successor employer a full and accurate list containing the name, address, date of hire, and employment occupation classification of each building service employee employed on the notice date at the site or sites covered by the terminated building service contract.

(4) When providing the notice required under this subsection, each covered employer shall ensure that a notice to building service employees is posted setting forth the rights provided under this section and which includes a copy of the list provided under the preceding sections, and that such notice is also provided to the employees' collective bargaining representative, if any. The notice and list shall be posted in the same location and manner that other statutorily required notices to employees are posted at the affected building(s).

(5) A successor employer shall retain for a ninety (90) day transition employment period at the affected building(s) those building service employee(s) of the terminated building service contractor (and its subcontractors), or other covered employer, employed at the building(s) covered by the terminated building service

contract or owned or operated by the former covered employer.

N.Y.C. Admin. Code § 22–505(b).

Citing the effects of the attacks of September 11, 2001, New York City enacted the NYDWPA "to promote stability in employment for building service workers, which [would] reduce the need for social services resulting from unemployment, and promote stability in the service industry." *Id.* Historical Note.

B. *Federal Preemption as Basis for Removal*

 "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Supreme Court has ruled that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425 (emphasis in original). As an exception to that rule, under the complete preemption doctrine, "the pre-emptive force of a statute [may be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

C. *Garmon Preemption*

 In *San Diego Bldg. Trades Council v. Garmon,* the Supreme Court held that "[w]hen it is clear or may fairly be as-

sumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *see also* 29 U.S.C. §§ 157 & 158. "Sections 7 and 8 of the [NLRA] regulate 'concerted activities' and 'unfair labor practices,' respectively, seeking to protect the former and stamp out the latter." *Bldg. Trades Employers' Educ. Assoc. v. McGowan*, 311 F.3d 501, 508 (2d Cir.2002) (citation omitted). "States are preempted from regulating conduct that even 'arguably' constitutes an unfair labor practice under NLRA § 8." *Caldwell v. Am. Basketball Ass'n, Inc.*, 66 F.3d 523, 527 (2d Cir.1995).

"Federal preemption is a defense, and therefore, the general rule is that even if a state law based cause of action is preempted by federal law, the case cannot be removed." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir.1997). Most courts have held that *Garmon* preemption is not a basis for removal from state to federal court. *See, e.g., Hayden v. Reickerd*, 957 F.2d 1506, 1512 (9th Cir. 1992) ("If the *Garmon* doctrine preempts state claims, jurisdiction vests in neither state nor federal court, but rather exclusively in the NLRB."); *Williams v. Comcast Cablevision of New Haven, Inc.*, 322 F.Supp.2d 177, 184 n. 6 (D.Conn.2004) ("District courts in this circuit have declined to find that *Garmon* preemption provides a basis for removal."); *Greco Bros. Readi–Mix Concrete Co. v. Local 282 Int'l Bhd. of Teamsters*, No. 01–CV–2217, 2002 WL 417167 (E.D.N.Y. Mar.7, 2002) (finding that *Garmon* preemption is not a basis for removal); *TKO Fleet Enters., Inc. v. Dist. 15, Int'l Ass'n of Machinists & Aerospace Workers*, 72 F.Supp.2d 83, 87 (E.D.N.Y.1999) ("[L]ower courts have uni-

formly held that defendants may not remove state claims to federal court by alleging *Garmon* preemption.").

### D. *Machinists Preemption*

■ The *Machinists* preemption doctrine is based on the Supreme Court's ruling in *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The doctrine "protects against interference with policies implicated by the structure of the [NLRA] itself, by preempting state law and state causes of action concerning conduct that Congress intended to be unregulated." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *see also Machinists*, 427 U.S. at 141, 96 S.Ct. 2548 (questioning whether action should be "controlled by the free play of economic forces") (citation omitted). This "form of preemption protects employers' and unions' use of 'economic weapons' that Congress aimed for them to have freely available." *McGowan*, 311 F.3d at 508 (quoting *Machinists*, 427 U.S. at 150–51, 96 S.Ct. 2548). Courts have generally held that *Machinists* preemption protects against the unsettling of the "balance of interests established in the NLRA." *Id.* at 509; *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("[T]he NLRA is concerned with ensuring an equitable bargaining process, not with the substantive terms that may emerge from such bargaining."); *Machinists*, 427 U.S. at 149, 96 S.Ct. 2548 (referring to the balance of power between labor and management).

Courts in this circuit have evidently not considered whether *Machinists* preemption provides a basis for removal to federal court. The parties have suggested no reason why the *Machinists* doctrine would

support removal when *Garmon* preemption does not. *See* Section IV.C., *supra.*

The Court of Appeals for the Second Circuit has declared that "state action is only preempted if it regulates the use of economic weapons that are recognized and protected under the NLRA such that the state or local government has entered 'into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" *Rondout Elec., Inc. v. N.Y.S. Dept. of Labor,* 335 F.3d 162, 167 (2d Cir.2003) (quoting *Machinists,* 427 U.S. at 149, 96 S.Ct. 2548). The Supreme Court has declared that the primary goal of the NLRA is the establishment of "an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain...." *Metro. Life Ins. Co.,* 471 U.S. at 753–54, 105 S.Ct. 2380 (describing purpose and goals of the NLRA).

In *Metro. Life Ins. Co.,* Massachusetts required that certain minimum health insurance benefits be provided to commonwealth residents. The insurance company argued that the law was preempted by the NLRA, because it imposed a contract requirement that ordinarily would have been the result of collective bargaining. In ruling that the state statute was not preempted, the Court held that "[m]inimum labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Id.* at 755, 105 S.Ct. 2380. Similarly, in *Fort Halifax Packing Co.,* 482 U.S. at 4, 107 S.Ct. 2211, the appellant challenged a Maine statute that required employers to make a one-time severance payment to employees in the event of a plant closing. The Court held that "the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of preemption." *Id.* at

21, 107 S.Ct. 2211. As the Court has concluded in the "minimum labor standard" cases, absence of a completely laissez-faire employment market does not automatically necessitate preemption under the "free play of economic forces" theory espoused in *Machinists.* The pivotal question is whether the state regulation in question is "'inconsistent with the general legislative goals of the NLRA.'" *Id.* (quoting *Metro. Life Ins. Co.,* 471 U.S. at 757, 105 S.Ct. 2380).

In *Machinists,* a state administrative agency held that union's members' concerted refusal to work overtime was a violation of state labor laws. The Court held that the state ruling was preempted by the NLRA, because Congress intended for "self-help economic activities" to be governed by the federal law of labor relations. *Machinists,* 427 U.S. at 148–50, 96 S.Ct. 2548; *see also Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 615–16, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) (finding preemption when the city imposed a limitation on economic self-help activities); *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 29 (2d Cir.1988) (holding that suit under New York law is preempted because it would alter labor-management relationship and "affect the collective bargaining process that lies at the heart of the NLRA"). "To violate *Machinists,* however, the state regulation at issue must do more than incidentally affect the union organizing process. The Supreme Court has consistently distinguished between state laws of general applicability (such as regulation of labor conditions), which generally are not preempted by the NLRA, and state regulation of the NLRA process itself, which generally is preempted." *Chamber of Commerce of United States v. Lockyer,* 364 F.3d 1154, 1167 (9th Cir.2004) (citing *Machinists,* 427 U.S. at 156, 96 S.Ct. 2548).

The litigation that most closely mirrors the facts of the instant case was decided by the Court of Appeals for the District of Columbia. *See Washington Serv. Contractors Coalition v. District of Columbia,* 54 F.3d 811 (D.C.Cir.1995). Appellees there argued that the District of Columbia's displaced workers statute—which is similar in spirit to New York's—was preempted by *Garmon* and *Machinists.* The court held that the law was not preempted, finding that the displaced workers law did not "disturb the labor dispute resolution system established by the NLRA." *Id.* at 817. It stated: "[T]he District has enacted substantive employee protective legislation having nothing to do with rights to organize or bargain collectively. The NLRA does not preempt such legislation." *Id.* at 818.

### E. *Section 301 Preemption*

■ "Under section 301 [of the Labor Management Relations Act], state law based claims for '[s]uits for violation of contracts between an employer and a labor organization' are completely preempted, and if such a suit is filed in state court, it can be removed to federal court." *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38 (2d Cir.1997) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393–94, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). The Supreme Court has held "that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

The Court of Appeals for the Second Circuit has held that "section 301 has no application in the absence of a currently effective [collective bargaining agreement]." *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 25 (2d Cir.1988). The court has also "found cases invoking section 301's sweeping preemptive force ... only where state law claims coincide with *current* collective bargaining agreements." *Id.* (emphasis in original) (citing *Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 851–52, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 203–04, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). "However, 'not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301' and '[a] collective-bargaining agreement may ... contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" *Hernandez,* 116 F.3d at 40 (quoting *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877). The Supreme Court has "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). The Court was "clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124, 114 S.Ct. 2068.

In *Foy v. Pratt and Whitney Group,* the court held that when the nature of the dispute is fact-intensive, the review of the collective bargaining agreement is not an "interpretation" requiring preemption. 127 F.3d 229, 234 (2d Cir.1997). The Court of Appeals for this circuit has admitted that the "boundary between claims requiring 'interpretation' of a [collective bargaining agreement] and ones that merely require such an agreement to be 'consulted' is elusive." *Vera v. Saks & Co.,*

335 F.3d 109, 115 (2d Cir.2003) (the court must decide whether there is an agreement between the parties to alter [a] common law rule") (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir.2001)).

## V. *Application of Law to Facts*

### A. *Garmon Preemption*

■ The Supreme Court has stated that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax Packing Co.*, 482 U.S. at 21, 107 S.Ct. 2211. The majority of courts considering the question of whether *Garmon* preemption supports removal have answered in the negative. Setting aside the question of whether the NYDWPA is preempted by sections 7 and 8 of the NLRA, *Garmon* preemption cannot support removal to federal court.

In any event, the only court to consider whether a displaced workers law is preempted by the *Garmon* doctrine found that it was not. *See Washington Serv. Contractors Coalition*, 54 F.3d at 816 ("The [displaced workers statute] therefore raises no issue that the NLRB would have jurisdiction to decide under § 7. . . . The 'terms' of the [displaced workers statute] thus do not 'encompass' any matter even arguably regulated by § 8 of the NLRA.").

### B. *Machinists Preemption*

■ "The Supreme Court has only applied the so called 'complete preemption' doctrine 'in the very narrow range of cases where "Congress has clearly manifested an intent" to make a specific action within a particular area removable.'" *Greco Bros.*, 2002 WL 417167, at *1 (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998)). *Machinists* preemption does not constitute the "extraordinary" circumstance, justifying complete federal preemption of state law. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425. The cases that have found complete preemption involved situations in which Congress has developed overarching comprehensive regulatory schemes leaving no space for the state action at issue. *See, e.g., Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, completely preempts competing state law); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (finding that sections of the Employee Retirement Income Security Act of 1974 (ERISA), 29 §§ 1001 to 1461, completely preempt state law). *Machinists* preemption is grounded in what Congress "intended to be unregulated," and courts decide which areas Congress may have intended to be left to market forces. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

Deciding on preemption is an inexact art. Congress, in not addressing certain matters, cannot generally be said to have signaled an intent to make suits based on state law covering those matters removable to federal court. To hold otherwise would contravene the Supreme Court's view that complete preemption is to be granted only sparingly and that courts should be reluctant to allow removal of cases to federal court based solely on the *Garmon* preemption defense.

Even assuming, *arguendo*, that *Machinists* preemption is a proper basis for removal, the NYDWPA is not preempted by the NLRA. State regulation is preempted by the NLRA when it intrudes on the collective bargaining process scheme since the NLRA is concerned with "labor dispute resolution." *Washington Serv. Contractors*, 54 F.3d at 817. The City law

operates completely independently of collective bargaining in the exercise of municipal police powers. It does not implicate any of the usual factors found to invite *Machinists* preemption. The NYDWPA does not conflict with or inhibit the bargaining or dispute resolution process established by the NLRA. The City law does not regulate economic self-help activities. The terms of the NYDWPA apply to union and nonunion employees equally. The NLRA does not preempt section 22–505 of the New York City Administrative Code.

## C. *Section 301 Preemption*

■ The central question here is whether the disposition of this case will require interpretation or mere consultation of a collective bargaining agreement. It is undisputed by the parties that there is no collective bargaining agreement between plaintiffs and defendant, the new owner of the property, Allied Properties. The alleged violation of the NYDWPA by Allied Properties does not require interpretation of plaintiffs' collective bargaining agreement with the former owner, their former employer, even though, if this case were to reach a damages phase, the agreement might determine back pay and the costs of benefits. *See* N.Y.C. Admin. Code § 22–505(c). The legality of any collective bargaining agreement is not challenged as in *Vera v. Saks & Co.,* 335 F.3d 109 (2d Cir.2003) (finding section 301 preemption because the court would be required to interpret the collective bargaining agreement based on legal challenges to its validity).

Defendants argue that section 301 preemption applies because the NYDWPA allows a successor employer to opt out of its provisions if "on or before the effective date of the transfer of control … or the commencement of services by a successor building service contractor, [the successor] agrees to assume, or to be bound by, the collective bargaining agreement of the predecessor covered employer covering building service employees, provided that the collective bargaining agreement provides terms and conditions for the discharge or laying off of employees." N.Y.C. Admin. Code § 22–505(d)(i). They claim that the opt-out provision requires an analysis of the terms and conditions of the predecessor's collective bargaining agreement with plaintiffs. Defendants' argument fails. There is no suggestion that the purchaser, Allied Properties, agreed to be bound by the collective bargaining agreement prior to the sale of the buildings. The opt-out provision is not implicated; interpretation of a collective bargaining agreement is not required.

Plaintiffs have brought suit under New York City law. The suit does not require interpretation of the collective bargaining agreement's provision on the sale or transfer of buildings. The agreement is not currently effective as to Allied Properties. As the Supreme Court put the matter, section 301 should not "be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

## VI. *The Problem of Sections 22–505(b)(8) and (d)*

■ The above analysis is placed in some doubt by two provisions of section 22–505 of the New York Administrative Code. Paragraph eight (8) of subdivision b provides that after the ninety-day period, if the employee's performance is satisfactory, the employee will be retained. It reads as follows:

b. (8) At the end of the 90–day transition period, the successor employer shall perform a written performance evaluation for each employee re-

tained pursuant to this section. If the employee's performance during such 90–day period is satisfactory, the successor contractor shall offer the employee continued employment under the terms and conditions established by the successor employer or as required by law.

N.Y.C. Admin. Code § 22–505(b)(8).

Subdivision d, as discussed in Section V.C., *supra*, permits an opt-out of the code provision by the successor employer in effect becoming involved in the predecessor's collective bargaining agreement, or its own agreement, or a new agreement. It reads as follows:

d. The provisions of this section shall not apply (i) to any successor employer that, on or before the effective date of the transfer of control from a predecessor covered employer to the successor employer or the commencement of services by a successor building service contractor, agrees to assume, or to be bound by, the collective bargaining agreement of the predecessor covered employer covering building service employees, provided that the collective bargaining agreement provides terms and conditions for the discharge or laying off of employees; or (ii) where there is no existing collective bargaining agreement as described in subsection (i) above, to any successor employer that agrees, on or before the effective date of the transfer of control from a predecessor covered employer to the successor employer or the commencement of services by a successor building service contractor, to enter into a new collective bargaining agreement covering its building service employees, provided that the collective bargaining agreement provides terms and

conditions for the discharge or laying off of employees; or (iii) to any successor employer whose building service employees will be accreted to a bargaining unit with a pre-existing collective bargaining agreement, provided that the collective bargaining agreement provides terms and conditions for the discharge or laying off of employees; or (iv) any covered employer that obtains a written commitment from a successor employer that the successor employer's building service employees will be covered by a collective bargaining agreement falling within subparts (i), (ii), or (iii) above.

*Id.* § 22–505(d).

These provisions suggest that the code requirements may impinge on national labor relations' preemptive laws and regulations because they seem to call for continued employment after the ninety-day period and for application of a collective bargaining agreement that would be subject to the NLRA. It is not clear, however, that these provisions are constitutional in so far as they arguably constitute an improper taking under the Fourteenth Amendment or an interference with federal labor law. *But cf. Washington Serv. Contractors,* 54 F.3d at 818 (no unconstitutional taking in D.C. statute).

The problem could be avoided by the state court declaring that subdivision d and paragraph eight (8) of subdivision b are unconstitutional, in violation of the Fourteenth Amendment and preemption under the Supremacy Clause of the federal constitution. In this respect, the lack of any sunset provision in section 22–505 might be relevant. The state court could declare these parts of section 22–505 (or the whole of section 22–505) invalid. It could then construe the statute in its constitutional aspects to guarantee only ninety

days' employment or payment in lieu of employment, rather than continued employment after ninety days. This would avoid any preemption problem warranting removal.

The state court should be given the opportunity to construe this municipal provision before the federal court does so, particularly because section 1 of the legislative findings and intent, as noted in Section IV.A., *supra,* suggest that the problem. addressed by section 22–505 was expected to be of limited duration. The entire declaration reads as follows:

> Section 1. Declaration of Legislative Findings and Intent. The effects of September 11 and the deepening recession have been devastating for low income New Yorkers. The volatility of the real estate industry coupled with new trends in the service economy are undermining stable employment relationships and creating a drain on an already overburdened social service system. At a time of great uncertainty, it is the policy of the City to promote stability in employment for building service workers, which will reduce the need for social services resulting from unemployment, and promote stability in the service industry.

*Id.* Historical Note.

In construing section 22–505 and the City's power to adopt it, appeal through the state system is more appropriate than appeal through the federal system. New York City's power to adopt an important provision affecting workers' rights may be limited. *See City of New York v. Beretta U.S.A. Corp.,* 315 F.Supp.2d 256, 263–74 (E.D.N.Y.2004) (discussing New York City's powers versus New York State's authority).

## VII. *Conclusion*

Plaintiffs' motion to remand is granted. No costs or disbursements.

SO ORDERED.